## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JEAN E. KARTCHNER,

            Plaintiff,

v.                                                          CV No. 19-1070 CG

ANDREW SAUL, Commissioner of the
Social Security Administration,

            Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff Jean Kartchner's *Brief in Support of Motion to Reverse or Remand* (the "Motion"), (Doc. 19), filed June 22, 2020; Defendant Commissioner Andrew Saul's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 21), filed July 30, 2020. Ms. Kartchner did not file a reply in support of her Motion and the time to do so has now passed. *See* D.N.M. LR-Civ. 7.4(a).

Ms. Kartchner filed an application for disability insurance benefits on February 23, 2016, alleging disability beginning February 9, 2016. (Administrative Record "AR" 86, 227). In her application, Ms. Kartchner claimed she was unable to work due to burning and pain in the following areas: right palm, fingers in her hand, upper muscles in her right arm, right arm pit extending into her left arm pit, right rib cage, and right shoulder blade. (AR 264). She also alleged twitching in her thighs and right foot and the presence of proteins in her brain and spinal fluid. (AR 264).

Ms. Kartchner's application was initially denied on June 17, 2016, and upon reconsideration on October 18, 2016. (AR 100, 114). Shortly thereafter, Ms. Kartchner

requested a hearing before an Administrative Law Judge ("ALJ"), which was held on January 10, 2018. (AR 29, 131). Subsequently, a supplemental hearing was held on July 9, 2018. (AR 62).

At both hearings, Ms. Kartchner appeared before ALJ Michelle Lindsay. (AR 29, 62). At the first hearing, Ms. Kartchner appeared with attorney Martha Posey and impartial Vocational Expert ("VE") Nicole King, and at the supplemental hearing, Ms. Kartchner appeared with attorney Nicole Baker and impartial VE Sherman Johnson. (AR 29, 62). On December 11, 2018, the ALJ issued her decision considering the testimony presented at both the initial and the supplemental hearings, and found Ms. Kartchner was not disabled at any time between her alleged onset date, February 9, 2016, through the date of her decision. (AR 22). Ms. Kartchner requested review by the Appeals Council, which was denied, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. (AR 1-2, 226); *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994) ("If the Appeals Council denies review, the ALJ's decision becomes the Secretary's final decision.").

In her Motion, Ms. Kartchner now argues the following errors require reversal and issuance of a favorable decision or remand for a new hearing: (1) the ALJ improperly considered her subjective complaints contrary to Social Security rulings and case law; and (2) the ALJ committed legal error in assigning little weight to the opinion of Ms. Kartchner's neurologist. (Doc. 19 at 7-10). The Court has reviewed the Motion, the Response, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because the ALJ committed a harmful legal error, the Court finds Ms. Kartchner's Motion shall be **GRANTED** and the case is **REMANDED** to the

Commissioner for further proceedings consistent with this opinion.

## I.      Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or to show . . . that she has done so, are also grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *See Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal*, 331 F.3d at 760 (quoting *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir.1989)) (internal quotation marks omitted). An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (quoting *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir.1988)) (internal quotation marks omitted) . While the Court may not re-weigh the evidence or try the

3

issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (internal citations omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)) (internal quotation marks omitted) (alteration made).

## II.  Applicable Law and Sequential Evaluation Process

A claimant establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 404.1505(a). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520.

At the first four steps of the SEP, the claimant bears the burden of showing (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) meet or equal one of the "listings"[1] of presumptively disabling impairments; or (4) she is unable to perform her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i-iv); *Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, the ALJ

---

1.      20 C.F.R. pt. 404, subpt. P, app. 1.

proceeds to step five of the SEP. 20 C.F.R. § 404.1520(g)(1); *Grogan*, 399 F.3d at 1261. At step five, the Commissioner bears the burden of showing the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### III.   Background

In her application for disability, Ms. Kartchner alleged she was unable to work due to burning and pain in the following areas: right palm, fingers in her hand, upper muscles in her right arm, right arm pit extending into her left arm pit, right rib cage, and right shoulder blade. (AR 264). She also alleged twitching in her thighs and right foot and the presence of proteins in her brain and spinal fluid. (AR 264). At step one, the ALJ determined Ms. Kartchner had not engaged in substantial gainful activity since her alleged onset date. (AR 14-15). At step two, the ALJ found Ms. Kartchner had the following severe impairments: depression and generalized anxiety disorder. (AR 15). Next at step two, the ALJ found Ms. Katchner had the following non-severe impairments: disc desiccation and diffuse endplate changes throughout the cervical, thoracic, and lumbar spine. (AR 15). The ALJ also found Ms. Katchner's allegations of neuropathy, carpal tunnel syndrome, cubital tunnel syndrome, cervical radiculopathy or demyelinating disease were non-medically determinable impairments. (AR 15).

At step three, the ALJ determined Ms. Kartchner's impairments did not meet or equal one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. (AR 15-16). The ALJ then found Ms. Kartchner had the RFC to perform a "full range of work at all exertional levels." (AR 17). In addition, the ALJ found Ms. Kartchner

was further restricted with the following limitations:

> [She] is able to understand and remember detailed instructions; however, [she] is able to maintain attention and concentration to perform and persist at only simple tasks for two hours at a time without requiring redirection to task. She requires work involving no more than occasional change in the routine work setting, and no more than occasional independent goal setting or planning.

(AR 17).

In formulating the RFC, the ALJ stated she considered Ms. Kartchner's symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical and other evidence, as required by 20 C.F.R. § 404.1529 and Social Security Ruling ("SSR") 16-3p. (AR 17). In addition, the ALJ stated she considered opinion evidence consistent with the requirements of 20 C.F.R. § 404.1527. (AR 17). The ALJ concluded that some of Ms. Katchner's impairments could be expected to cause her alleged symptoms, but she found the intensity, persistence, and limiting effects Ms. Kartchner described were not entirely consistent with the evidence in the record. (AR 17-18).

As for the opinion evidence, the ALJ gave "no weight" to opinions authored by Ms. Katchner's treating neurologist, Leonel Perez-Limonte, M.D. (AR 20, 546). On the other hand, the ALJ gave "great weight" to the opinions of State Agency medical consultants Michael Slager, M.D., and Robert Weisberg, M.D. (AR 19). Similarly, the ALJ gave great weight to the opinion authored by psychiatric consultative examiner Brian Whitlock, M.D. (AR 19).

At step four, the ALJ found Ms. Kartchner was unable to perform her past relevant work as a legal assistant, receptionist, bookkeeper, and office clerk. (AR 20-21). At step five, the ALJ determined Ms. Kartchner had at least a high school education

and could communicate in English. (AR 21). Relying on the VE's testimony, the ALJ

found that considering Ms. Kartchner's age, education, work experience, and assessed

RFC, she could perform other work as an office helper, arcade attendant, and sales

attendant. (AR 21-22). After finding Ms. Kartchner was able to perform other work

existing in significant numbers in the national economy, the ALJ concluded she was "not

disabled," as defined by 20 C.F.R. § 404.1520(g), from February 9, 2016 through the

date of the decision. (AR 22).

**IV.    Analysis**

Ms. Kartchner presents two arguments in her Motion. (Doc. 19 at 7-10). First, Ms.

Kartchner argues the ALJ erred in her analysis of Ms. Kartchner's subjective

complaints, specifically with respect to her physical ailments. *Id.* at 7-9. Second, she

asserts the ALJ erred in her analysis of Dr. Perez-Limonte's opinion. *Id.* at 9-10. In

response, the Commissioner contends that because Ms. Kartchner does not have a

medically determinable impairment that could cause her alleged symptoms, the ALJ

appropriately did not consider her complaints. (Doc. 21 at 6). Additionally, the

Commissioner maintains that substantial evidence supports the ALJ's assignment of

little weight to Dr. Perez-Limonte's opinion. *Id.* at 8.

*A.  The ALJ's Consideration of Ms. Kartchner's Subjective Complaints*

Having filed her application in February 2016, Ms. Kartchner argues the ALJ

incorrectly applied SSR 16-3p instead of SSR 96-7p, as SSR 16-3p did not become

effective until March 28, 2016. (Doc. 19 at 8). Specifically, Ms. Kartchner contends that

when a rule change occurs after a Social Security claim is filed, the "general standard is

that 'a rule changing the law is retroactively applied only if Congress expressly

authorized retroactive rulemaking and the agency clearly intended the rule to have

retroactive effect.'" *Id.* at 7 (quoting *Cherry v. Barnhart*, 327 F. Supp. 2d 1347, 1355

(N.D. Okla. 2004) (internal citation omitted)). Ms. Kartchner alleges the application of

SSR 16-3p in her case does not fulfill these criteria—express authorization by Congress

and clear intent by the Agency. *Id.* at 7-8. Ms. Kartchner explains that under SSR 96-7p,

the ALJ is tasked with considering several factors, and she claims the ALJ's analysis

failed to consider two important factors—Ms. Kartchner's outstanding earnings record

and her credibility. *Id.*

The Commissioner responds that Ms. Kartchner does not have a medically

determinable impairment to account for her alleged symptoms, and therefore, the ALJ

was not required to consider her complaints under either Social Security ruling. (Doc. 21

at 6). Moreover, the Commissioner argues the result is the same under either ruling, as

both require a medically determinable impairment as a prerequisite. *Id.* at 7. Because

Ms. Kartchner does not challenge the ALJ's finding that she does not have a medically

determinable physical impairment, the Commissioner maintains the ALJ's decision

should be affirmed. *Id.*

Social Security Ruling 16-3p rescinded and superseded SSR 96-7p, and came

into effect on March 28, 2016, approximately one month after Ms. Kartchner filed her

application. 2016 WL 1237954, at *1. In describing one objective of the new ruling, it

states that it "[eliminated] the use of the term 'credibility' from our sub-regulatory policy,

as our regulations do not use this term." *Id.* at *1. While the two rulings differ in this

respect, they both require the establishment of a medically determinable impairment

prior to consideration of a claimant's symptoms. *Id.* at *3 ("We use a two-step process

for evaluating an individual's symptoms.…Step 1: We determine whether the individual has a medically determinable impairment…."); SSR 96-7p, 1996 WL 374186, at *2 ("The regulations describe a two-step process for evaluating symptoms…First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)….").

A medically determinable impairment "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521. Objective medical findings include "anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* Licensed physicians are considered acceptable medical sources. 20 C.F.R. § 404.1502(a)(1).

Ms. Kartchner does not contest the ALJ's finding of non-medically determinable impairment, but rather alleges the ALJ incorrectly applied SSR 16-3p. *See* (Doc. 15 at 8). However, under both SSR 97-8p and 16-3p the claimant must first have a medically determinable impairment. Because Ms. Kartchner does not challenge the ALJ's finding of non-medically determinable impairment, this finding remains operative. Due to this finding remaining operative, the ALJ was not required to consider Ms. Kartchner's subjective complaints under either SSR. Thus, the ALJ's alleged failure to consider Ms. Katchner's physical subjective complaints does not constitute a legal error. As such, the Court denies Ms. Kartchner's request to remand on this basis.

### B. The ALJ's Consideration of Dr. Perez-Limonte's Opinion

Second, Ms. Kartchner argues the ALJ failed to assign Dr. Perez-Limonte's opinion controlling weight as required by SSR 96-2p. (Doc. 19 at 9). Specifically, Ms.

Kartchner alleges SSR 96-2p was in effect on the date she filed her application, but "was ignored by the ALJ and Commissioner." *Id.* at 9. Furthermore, Ms. Kartchner alleges the ALJ failed to consider numerous different sets of records that "more than adequately substantiate [Dr. Perez-Limonte's] opinions." *Id.* at 10.

In response, the Commissioner maintains that substantial evidence supports the ALJ's assignment of little weight to Dr. Perez-Limonte's opinion. (Doc. 21 at 8). In particular, the Commissioner argues the ALJ's finding of a non-medically determinable impairment is supported by substantial evidence, including a notation in Dr. Perez-Limonte's opinion in which he wrote that several of Ms. Kartchner's diagnostic tests returned normal results. *Id.* at 9. According to the Commissioner, given that there were no objective findings to support the presence of a medically determinable physical impairment, the "ALJ reasonably discounted Dr. Perez-Limonte's opinions." *Id.* The Commissioner also notes that Ms. Kartchner failed to point to any specific objective findings that support Dr. Perez-Limonte's opinion or that "overcome[s] the substantial evidence supporting the ALJ's decision." *Id.*

Although ALJs need not discuss every piece of evidence, they are required to discuss the weight assigned to each medical source opinion. *Keyes-Zachary*, 695 F.3d at 1161 (citation omitted). That is, when assessing a plaintiff's RFC, an ALJ must explain what weight she assigns to each opinion and why. *Id.* "Treating sources" are generally entitled to more weight than other sources. *See* 20 C.F.R. § 404.1527(c)(2).[2] Indeed, a treating source's opinion is entitled to "controlling weight" if it is both

_____

2.      These regulations apply because Mr. Kartchner's application was filed prior to March 27, 2017. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017).

"supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence" in the record. *Id.* If the ALJ fails to provide explicit analysis on whether the opinion deserves controlling weight, the Tenth Circuit has explained that a reviewing court may determine an ALJ "implicitly declined to give the opinion controlling weight" and negating grounds for remand. *Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014).

If the treating source's opinion is not given controlling weight, the ALJ must next consider several factors in determining how much weight to assign the opinion. 20 C.F.R. § 404.1527(c). Those factors are as follows: "(1) Length of the treatment relationship and the frequency of examination…; (2) Nature and extent of the treatment relationship…; (3) Supportability…; (4) Consistency…; (5) Specialization…; and (6) Other factors…." 20 C.F.R. § 404.1527(c)(i)(ii), (c)(3)-(c)(6) (the "§ 404.1527 factors"); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003). An ALJ need not explicitly discuss every factor. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

However, the ALJ must at least provide an explanation that is "sufficiently specific to [be] clear to any subsequent reviewers." *Langley*, 373 F.3d at 1119 (citation omitted). Additionally, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). Further, the ALJ must "always give good reasons in [the]…decision for the weight [given to a] treating source's medical opinion." 20 C.F.R. § 404.1527(c)(2). Finally, the ALJ's stated reasons for the assigned weight must be supported by substantial evidence. *See Doyal*, 331

11

F.3d at 764. Substantial evidence requires that an ALJ discuss uncontroverted evidence she chooses not to rely on, significantly probative evidence she rejected, and the evidence supporting her decision. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (citation omitted).

In his opinion statements, Dr. Perez-Limonte provided limitations greater than the ALJ's RFC. For instance, Dr. Perez-Limonte opined Ms. Kartchner's chronic pain and fatigue prevented her from doing any strenuous or continuous action for two hours without requiring frequent repositioning and breaks; she was limited to sitting, standing, and walking less than two hours in an eight-hour day; she should never lift any amount of weight, perform postural moves, or move her head in any direction; and she would miss more than four days of work per month. (AR 792, 814-18). The ALJ gave Dr. Perez-Limonte's opinion "no weight" for two reasons. (AR 20). First, the ALJ found these limitations were "wholly inconsistent with objective testing that evinced normal nerve conduction of the bilateral upper extremities and showed no demyelinating disease in the brain, [as] referenced in Dr. [Perez] Limonte's statement." (AR 20). Second, the ALJ noted Ms. Kartchner's "subjective symptoms cannot be the basis for establishing medically determinable impairments and the limitations that come from them." (AR 20). As correctly noted by the ALJ, in his opinion statement Dr. Perez-Limonte explained Ms. Kartchner had several normal nerve conduction studies and normal MRI results of her cervical spine. (AR 814).

In the decision, the ALJ "implicitly" declined to give controlling weight to Dr. Perez-Limonte's opinion, a conclusion that is evident from her assignment of no weight. *See Mays*, 739 F.3d at 575. After determining Dr. Perez-Limonte's opinion was not

entitled to controlling weight, the ALJ was then required to consider the § 404.1527 factors to determine how much weight the opinion should be assigned. First, the ALJ cited inconsistency between Dr. Perez-Limonte's opinion and evidence from diagnostic test results showing normal results. (AR 20). This explanation aligns with the fourth factor—the degree to which the opinion is consistent with the record. 20 C.F.R. § 404.1527(c)(4).

For her second explanation, the ALJ referred back to her finding of a non-medically determinable impairment, and explained that because of this finding, Ms. Kartncher's symptoms alone could not support her alleged limitations. (AR 20). This rationale does not align with any of the named factors, and therefore falls into the category of "other factors." *See* 20 C.F.R. § 404.1527(c)(6). However, the ALJ failed to connect this prior finding to Dr. Perez-Limonte's opinion. Instead of discussing how this finding could undermine the evidence supporting Dr. Perez-Limonte's opinion, the AJ simply restated a prior finding that was untethered to any specific limitation, finding, or evidence supporting or undermining Dr. Perez-Limonte's opinion.

To survive judicial review, the ALJ's stated reasons for rejecting a physician's opinion must be sufficiently specific and supported by substantial evidence. *See Langley*, 373 F.3d at 1119; *Doyal*, 331 F.3d at 764. Here, Dr. Perez-Limonte's treatment records reveal probative evidence supportive of his opinion but not discussed by the ALJ. For example, Ms. Kartchner began seeing Dr. Perez-Limonte as far back as 2013 with reports of numbness in her right hand and wrist. (AR 546-47). She continued to see Dr. Perez-Limonte fairly regularly with similar complaints through at least September 2017, though in April 2017 began complaining of similar symptoms on her left side. *See,*

*e.g.,* (AR 559, May 2013), (AR 565, February 2014), (AR 442-445, May 2015), (AR 430, November 2015), (AR 610, February 2016), (AR 822, April 2017), (AR 844, September 2017).

At the appointments in which he performed a physical examination, Dr. Perez-Limonte consistently documented that Ms. Kartchner had decreased sensation to pinprick along her right hand's median nerve distribution, but otherwise intact sensations, and a decreased reflex in her right hand. *See, e.g.,* (AR 611, February 2016) (AR 614, April 2016) (AR 822, April 2017). None of these findings were reported in the ALJ's assessment of Dr. Perez-Limonte's opinion, nor were they discussed in the ALJ's step two finding of a non-medically determinable impairment. (AR 15, 20). Dr. Perez-Limonte's treatment records also contain findings that conflict with his opinion, such as otherwise largely normal neurological clinical findings, (*see, e.g.,* AR 822), and an April 2016 notation in which he wrote that "[h]er symptoms are very subjective", (AR 614), yet none of this was provided in the ALJ's explanation for her assignment of little weight to his opinion. (AR 20).

As a result of having not cited any conflicting evidence from Dr. Perez-Limonte's treatment records, the ALJ's decision does not demonstrate that she considered all significantly probative evidence. *See Clifton*, 79 F.3d at 1009 (holding that substantial evidence requires consideration of both evidence supportive of the ALJ's determination but also significantly probative evidence the ALJ rejected). Furthermore, the ALJ's selective omission of conflicting evidence evinces impermissible cherry-picking of evidence. *See Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018) ("[A]lthough an ALJ is entitled to resolve conflicts in the record…she may not 'pick and

14

choose among medical reports, using portions of evidence favorable to [her] position while ignoring other evidence,' or mischaracterize or downplay evidence to support her findings.") (quoting *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004)) (internal citations omitted).

In support of the ALJ's analysis, the Commissioner contends the ALJ considered all pertinent evidence from Dr. Perez-Limonte's treatment notes and diagnostic test results. (Doc. 21 at 9). The Commissioner is correct that the ALJ considered some pertinent evidence, such as diagnostic test results, and used this evidence in support of her assignment of little weight. However, the Commissioner incorrectly argues that the ALJ considered all significantly probative evidence. Rather than discussing with specificity Dr. Perez-Limonte's treatment notes that both supported and conflicted with his opinion, the ALJ cursorily referred only to diagnostic test results. (AR 20). Such opinion analysis fails to provide the "sufficiently specific" explanation required for rejecting an opinion, particularly a treating source's opinion. *See Clifton*, 79 F.3d at 1009 (stating that because of "the absence of ALJ findings supported by specific weighing of the evidence" the court was unable to "assess whether relevant evidence adequately supports the ALJ's conclusion").

In short, the ALJ only provided one adequately-supported explanation tied to the § 404.1527 factors. The ALJ also failed to properly discuss all pertinent probative evidence. These errors, coupled with the deference afforded to a treating physician's opinion, the Court finds the ALJ's assessment of Dr. Perez-Limonte's opinion does not meet the standard for adequate opinion analysis of a treating source. For these reasons, the Court finds the ALJ committed harmful error requiring remand.

*C.  Ms. Kartchner's Request for Issuance of a Fully Favorable Decision*

Finally, Ms. Kartchner asks the Court to reverse her case and issue a fully

favorable decision. (Doc. 19 at 7). It is within the Court's discretion to remand for an

immediate award of benefits. *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993).

Among other factors, courts may consider the length of time a case has been pending

and, given the available evidence, whether remand for additional fact-finding would be

useful or merely delay receipt of benefits. *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th

Cir. 2006).

Here, approximately four years have passed since Ms. Kartchner applied for

benefits. (AR 86, 227). This does not represent an unusually long period of time as

compared to similar Social Security cases. Moreover, the Court does not find that

additional fact-finding would be futile. For example, although the record contains

evidence supportive of Ms. Kartchner's allegations, there is also evidence inconsistent

with her allegations. Therefore, the Court will not conclude there is substantial and

uncontradicted evidence in the record that indicates Ms. Kartchner is disabled. *See Lax

v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (explaining the court may consider

whether the ALJ followed the rules of law when weighing certain evidence, but may not

reevaluate the evidence or substitute its judgment for the judgment of the

Commissioner). The Court therefore will not remand for issuance of a fully favorable

decision.

**V.     Conclusion**

For the foregoing reasons, the Court finds the ALJ did not commit a harmful legal

error in her consideration of Ms. Karchner's subjective complaints. However, the Court

finds the ALJ erred in her consideration of Dr. Perez-Limonte's opinion, contrary to the

standards set by regulation, Social Security rulings, and case law.

**IT IS THEREFORE ORDERED** that Ms. Kartchner's *Brief in Support of Motion to Reverse or Remand* (Doc. 19), is **GRANTED** and this case is **REMANDED** for additional proceedings consistent with this opinion.

**IT IS SO ORDERED**.

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE